UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                                            Case No:   6:17-cv-2060-Orl-28TBS

HERVE ERILUS and HERVE ERILUS,
LLC,

      Defendants.

_____

## REPORT AND RECOMMENDATION

This case comes before the Court on Plaintiff's Motion for Default Judgment (Doc. 30). The motion is supported by the Declaration of Daniel Applegate, an attorney representing the United States (Doc. 30-1), the Declaration of IRS Revenue Agent Joseph Conroy (Doc. 30-2), the Declaration of Amanda Reinken, a paralegal assisting Mr. Applegate (Doc. 30-3), a Status Report Pursuant to the Servicemembers Civil Relief Act (Doc. 30-4), and a Certificate of Authenticity for Business Records from Santa Barbara Tax Products Group (Doc. 30-5). After review of the record and upon due consideration, I respectfully recommend that the motion be **granted.**

## I. Background

The government brings this action against Defendants Herve Erilus and Herve Erilus, LLC (the "Company"), seeking to enjoin them from acting as tax return preparers and for disgorgement of ill-gotten gains (Doc. 1). The Company was served with a summons and copy of the complaint on December 7, 2017, by service on its registered agent, Herve Erilus (Doc. 11). The Company failed to answer and on March 14, 2018, the Clerk entered default (Doc. 20).[1] The docket does not contain a return of service for

---

[1] The Court struck the response filed on behalf of the Company, and told Defendants a corporation can only be heard through counsel admitted to practice in the Court, pursuant to Local Rules 2.01 and 2.02

Herve Erilus individually but, on December 28, 2017, the district judge found that the "Response to Summons In A Civil Action," filed at docket entry 7, "appears to be an Answer to the Complaint in this action on behalf of both Defendants." (Doc. 9) On March 12, 2018, the Court directed Mr. Erilus to show cause in writing why sanctions should not be imposed for his failure to file a Certificate of Interested Persons, as ordered by the Court (Doc. 14). On April 3, 2018, the Court directed Mr. Erilus to show cause in writing why default should not be entered against him for his failure to respond to the Court's first show cause order, and for his failure to appear at a scheduled case management meeting (Doc. 24). The Court informed Mr. Erlilus that it would enter a default against him if he failed to respond. Mr. Erilus did not respond within the time allowed and two weeks later, the Court directed the Clerk to enter default against him (Docs. 25 and 26). Now, the government seeks entry of a default judgment including a permanent injunction under 26 U.S.C. §§ 7407 and 7408, to bar Defendants from acting as tax return preparers and from owning and operating tax preparation businesses; and under 26 U.S.C. §7402, to disgorge their ill-gotten gains received for the preparation of falsified tax returns. Neither Defendant has responded to the motion for default judgment and it was referred to me for issuance of a report and recommendation.

## II. Discussion

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). However, a defendant's default alone does not require the court to enter a default judgment. DIRECTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005). Before judgment

---

(Doc. 9.).

is entered pursuant to FED. R. CIV. P. 55(b), there must be a sufficient basis in the pleadings to support the relief sought. Id.

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] In defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Id. "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short ... a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Id.

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543-44 (11th Cir. 1985). "Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts." See id. at 1544 (quoting United Artists Corp. v. Freeman, 605 F.2d 854 (5th Cir. 1979) (per curiam).

A.  Appropriateness of the Entry of Default

*Herve Erilus*

Herve Erilus answered the complaint on December 26, 2017 (Docs. 7 and 9), however, he failed to respond to multiple Court Orders or to otherwise participate in this

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

litigation (Docs. 10, 14, 24). On April 3, 2018, the Court issued its final show cause order

informing Mr. Erilus that the price of his failure to respond was default:

> Defendant Erilus shall show cause in writing to this Court no
> later than April 17, 2018 why default should not be entered
> against him for failing to comply with this Court's orders and
> failing to appear for the scheduled case management
> meeting. Failure to respond to this Order within the time
> allotted, will result in a default being entered without further
> notice.

(Doc. 24 at 1). Default is an appropriate sanction for a defendant's failure to participate in

litigation and/or respond to a court's orders. See DIRECTV, Inc. v. Huynh, 318 F. Supp.2d

1122,1127 (M.D. Ala. May 19, 2004) (citing FED. R. CIV. P. 16(f)). Mr. Erilus failed to

respond to this final show cause order within the time allotted by the Court, despite

having been warned about the possibility of sanctions. Therefore, the entry of default

against him was proper.

*The Company*

A plaintiff may serve a corporate defendant by,

> [D]elivering a copy of the summons and of the complaint to an
> officer, a managing or general agent, or any other agent
> authorized by appointment or by law to receive service of
> process and–if the agent is one authorized by statute and the
> statute so requires–by also mailing a copy of each to the
> defendant[.]

FED. R. CIV. P. 4(h)(1)(B). A plaintiff may also serve a defendant by "following state law for

serving a summons in an action brought in courts of general jurisdiction in the state where

the district court is located or where service is made[.]" FED. R. CIV. P. 4(h)(1)(A), 4(e)(1).

Florida Statutes permit process to be served on a corporation by serving any one of the

following persons: (a) the president, vice president or other corporate head; (b) the

cashier, treasurer, secretary, or general manager; (c) any corporate director; (d) any

officer or business agent residing in Florida; (e) an agent designated by the corporation

under FLA. STAT. 48.091.[3] See FLA. STAT. § 48.081. If the address provided for the

registered agent, officer, or director is a residence or private residence, "service on the

corporation may be [made by] serving the registered agent, officer, or director in

accordance with s. 48.031." Id. at § 48.081(3)(b). Section 48.031, permits a process

server to effect service on "any person residing therein who is 15 years of age or older ..."

FLA. STAT. § 48.031(1)(a).

The return of service shows that Herve Erilus is the Company's registered agent

(Doc. 11).[4]  On December 7, 2017, Mr. Erilus was served on behalf of the Company at its

"principal address," as listed on the state of Florida's corporate database:

http://sunbiz.org. Upon being served with the summons and complaint, the Company had

through December 28, 2017 to respond. See FED. R. CIV. P. 12(a)(1)(A)(i) ("A defendant

must serve an answer within 21 days after being served with the summons and

complaint[.]"). The Court struck the Company's response because it was not filed by an

---

[3] FLA. STAT. § 48.091 provides:

> (1) Every Florida corporation and every foreign corporation now qualified
> or hereafter qualifying to transact business in this state shall designate a
> registered agent and registered office in accordance with chapter 607.

> (2) Every corporation shall keep the registered office open from 10 a.m. to
> 12 noon each day except Saturdays, Sundays, and legal holidays, and
> shall keep one or more registered agents on whom process may be served
> at the office during these hours. The corporation shall keep a sign posted
> in the office in some conspicuous place designating the name of the
> corporation and the name of its registered agent on whom process may be
> served.

Under the statute, if plaintiff is unable to serve the registered agent because of the failure to comply with
FLA. STAT. § 48.091, "service of process shall be permitted on any employee at the corporation's principal
place of business or on any employee of the registered agent." FLA. STAT. § 48.081(3)(a).

[4]
http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionT
ype=Initial&searchNameOrder=HERVEERILUS%20L110000976030&aggregateId=flal-l11000097603-
d263e7d3-a6d7-464f-a029-
e0f6b2d097ce&searchTerm=%22Herve%20Erilus%2C%20LLC%22&listNameOrder=HERVEERILUS%20L
110000976030

attorney admitted to practice before this Court (Doc. 9). No attorney has made an

appearance (or filed an appropriate response) on behalf of the Company and the time

within to do so has passed. Thus, default was properly entered against the Company.

   B.  Entry of Default Judgment

   The government brings this lawsuit pursuant to Sections 7405, 7407 and 7408 of

the Internal Revenue Code (26 U.S.C.) (the "I.R.C."). Based on the averments in its

complaint, the government seeks a permanent injunction against Defendants and

disgorgement of the fees they received. The Eleventh Circuit explained, in affirming

Judge Conway's findings in a related case:

> Section 7402(a) grants a district court broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws," authority that is "in addition to and not exclusive of any and all other remedies" available to enforce the internal revenue laws.

> Under § 7407, a district court is authorized to enjoin a tax return preparer from specified conduct, including conduct subject to penalty under I.R.C. §§ 6694 or 6695, and "engaging in ... fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws." If such conduct has been continual or repeated, the court may enjoin a preparer from preparing any federal tax returns if it finds that a narrower injunction would be insufficient to prevent further interference with the administration of the tax laws. Id.; see United States v. Ernst & Whinney, 735 F.2d 1296, 1302-03 (11th Cir. 1984).

> **Tax return preparers violate §§ 6694(a) and 6695 by understating a taxpayer's liability due to an unreasonable position, "reckless[ly] or intentional[ly] disregard[ing] of [IRS] rules or regulations," not identifying themselves as the paid preparer of a return, or claiming the Earned Income Tax Credit without complying with the statutory due diligence requirements. I.R.C. §§ 6694(a), (b), 6695(c), (g). Once the Government establishes any of the violations enumerated in § 7407, it need only demonstrate that "injunctive relief is appropriate to prevent recurrence of such conduct." § 7407(b)(2); see Ernst & Whinney, 735 F.2d at 1303.**

> Under § 7408, a district court is authorized "to enjoin any person from further engaging in specified conduct," including

> acts subject to penalty under I.R.C. § 6701, if the court finds that the person "has engaged in" such conduct and if "injunctive relief is appropriate to prevent recurrence of such conduct." Section 6701(a) imposes a penalty on any person who: (1) "aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document"; (2) "knows (or has reason to believe) that such portion will be used in connection with a material matter arising under the internal revenue laws"; and (3) "knows that such portion (if so used) would result in an understatement of the liability for tax of another person." Violations of § 6701(c) include "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

United States v. Stinson, 661 F. App'x 945, 949-50 (11th Cir. 2016) (emphasis added).

The decision to issue an injunction pursuant to § 7402(a) "is governed by the traditional factors shaping the district court's use of the equitable remedy." Ernst & Whinney, 735 F.2d 1296, 1302 (11th Cir. 1984). To establish liability under § 7402, the government must prove a pattern of gross negligence or recklessness, so long as injunctive relief is "'necessary or appropriate for the enforcement of the internal revenue laws.'" United States v. Stinson, 239 F. Supp. 3d 1299, 1324-25 (M.D. Fla. 2017) (citing Stinson, 661 F. App'x at 952). A plaintiff is entitled to a permanent injunction if it can demonstrate:

> (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardship between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Enpat, Inc. v. Budnic, No. 6:11-cv-86-PCF-KRS, 2011 WL 1196420, at *3 (M.D. Fla. Mar. 29, 2011) (citing eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 393 (2006)); Angel Flight of Ga., Inc. v. Angel Flight of Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008).

*Allegations of the Complaint*

The following well-pled allegations are taken as admitted by virtue Defendants' defaults. Mr. Erilus, has been preparing tax returns for others since at least 2011 (Doc. 1,

¶ 5). He began working at LBS Tax Services as a manager, tax return preparer, and marketer at LBS Tax Services tax preparation stores owned by Jean Demesmin and Tonya Chambers[5] (Id., ¶ 10). On or about August 25, 2011, he incorporated the Company for which he is both the sole member and registered agent (Id., ¶ 6). In December, 2014, Defendants began operating a tax preparation business under the Company's name and Travelers Tax Services (Id., ¶ 7). Mr. Erilus is paid to prepare tax returns and, as sole owner of the Company, he employs people[6] who also prepare tax returns for compensation (Id., ¶ 8). Defendants repeatedly prepare tax returns for its customers that perpetuate various fraudulent tax schemes.

In the first such scheme, Defendants prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC"),[7] often based on bogus dependents, fabricated business income and expenses, and/or false filing status (Id., ¶ 22).

Defendants falsify information to claim the maximum EITC for their customers (Id., ¶ 27). Defendants exploited the EITC rules by creating phony Schedule C income or expenses, or reporting bogus dependents and business losses, to bring customers'

---

[5] The United States filed suit against Demesmin and Chambers on September 23, 2014. See United v. Demesmin, et al., 6:14-cv-1537 (M.D. Fla.). This Court entered a permanent injunction against Demesmin and Chambers on September 7, 2016 and November 6, 2016, respectively, barring them from preparing tax returns and owning and operating a tax preparation business (Doc. 1, ¶ 12).

[6] This Order references "Defendants," but also covers the actions taken by employees over which Defendants have direct supervision and control. The actions of employee-tax preparers are imputed to Defendants. Cf. United States ex rel. Harris v. Lockheed Martin Corp., Civil Action No. 1:08-cv-3819-AT, 2013 WL 12328947, at *3 (N.D. Ga. Feb. 5, 2013).

[7] The EITC is a refundable tax credit available to certain low-income working people. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. See 26 U.S.C. § 32 and the accompanying Treasury Regulations. Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury. Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. The amount of the credit increases as income increases between $1 and $13,650, and decreases as income increases beyond $17,830. Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range." (Doc. 1, ¶¶ 23-24).

incomes within the EITC "sweet spot." (Id., ¶¶ 26, 29, 47-49). On some of these returns,

Defendants reported substantial income, but little or no expenses (Id., ¶ 29). On other

returns, Defendants reported substantial expenses, but little or no income (Id.). The

determining factor was whether the tax return preparer needed to inflate a customer's

income (or create income when the customer had none) to bring the income within the

EITC range or "sweet spot," or lower the taxable income of a customer who had actual

income (such as wages reported on a W-2) in order to bring the income within the EITC

"sweet spot." (Id.).

Tax preparers are required to follow "due diligence" requirements if claiming the

EITC on behalf of their customers (Id., ¶ 27). Defendants failed to adhere to these due

diligence requirements. Instead, they falsified information in order to maximize the EITC

for their customers (Id., ¶ 28).

In the second scheme, Defendants prepared tax returns for customers that

included bogus Schedule A deductions, including for charitable contributions, medical

expenses, and unreimbursed employee business expenses purportedly paid by their

customers, to improperly or fraudulently reduce the customers' taxable income (Id., ¶¶

71-72).

In the third scheme, Defendants claimed bogus education expenses and

refundable education credits on customers' tax returns (Id., ¶ 53). Unlike many tax

credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they

have no tax liability (Id.). Defendants claimed false education credits on the returns of

customers who did not attend college and had no qualifying education expenses (Id.). By

doing this, Defendants generated large, bogus refunds for their customers (Id.).

Lastly, Defendants charged unconscionably high tax preparation fees, mostly

through added, deceptive fees which were often charged without the customers'

knowledge (Id., ¶¶ 79-85). Defendants routinely and intentionally failed to disclose to customers all fees charged (Id., ¶ 84). Defendants also routinely failed to provide customers with copies of their completed tax returns (Id., ¶ 88-90) This was done to conceal Defendants' fraud (Id.).

The government alleges a number of specific instances of wrongdoing to support its claim that Defendants and their employees made false claims for tax credits or deductions on behalf of customers in order to inflate the customers' refunds, and charge exorbitant fees (Id., ¶¶ 30-52, 54-65, 73-78, 86-87).

The government's uncontradicted averments are sufficient to prove that Defendants falsely claimed the EITC for customers; falsely claimed on Forms Schedule C that customers had non-existent businesses that incurred phony expenses to generate net losses greater than $5,000, to falsely lower the reported taxable income; reported fabricated unreimbursed employee business expenses, often for inflated, non-qualifying commuting mileage, on Forms Schedule A, to falsely lower customers' reported taxable income; reported bogus educational expenses and refundable education credits; and charged unconscionably high tax preparation fees.

*Injunctive Relief*

The allegations in the government's complaint, recited above and admitted by virtue of the defaults, demonstrate that Defendants violated I.R.C. §§ 6694(a), 6695 and 6701, and that injunctive relief is appropriate and necessary to enjoin them from continuing to engage in the illegal conduct. The government has established that: (1) it has suffered irreparable harm, as evident by the misuse of its resources to review the fraudulent tax returns and to prosecute Defendants' fraudulent activity; (2) Section 7402 empowers the Court to enter equitable relief (including injunctive relief and disgorgement) as remedies for the violation of internal revenue laws; (3) the balance of hardships weighs

in favor of the government and against any loss Defendants may suffer from the enjoining of their wrongful conduct; and (4) the public has a compelling interest in enjoining Defendants from continuing to engage in such egregious conduct. See Stinson, 661 F. App'x at 953-954. The government has submitted a proposed Order which includes a permanent injunction (Doc. 30-6). I recommend that the government's motion be granted to the extent it seeks injunctive relief, and that an injunction consistent with the terms proposed by the government be entered against both Defendants.

*Disgorgement*

The government also seeks a money judgment against Defendants, jointly and severally, on its claim for disgorgement of Defendants ill-gotten gains received from the preparation of fraudulent tax returns in 2016, 2017, and 2018 (Doc. 30 at 42-43). The government represents that its disgorgement request is limited to $107,895.34 in fees generated from Defendants' preparation of federal income tax returns that fall into one of the following categories:

- Category A: Education credits where (1) no IRS Form 1098-T "Tuition Statement" was issued by an educational institution for the taxpayer, or the taxpayer's dependent, claiming the education credit, or (2) the grants or scholarships reported on the Form 1098-T exceed the qualifying education expenses reported on the Form 1098-T, so that the taxpayer or taxpayer's dependent claiming the education credit had no reported out-of-pocket qualifying educational expenses.

- Category B: Self-employed business income and/or expenses reported on Forms Schedule C.

- Category C: The EITC.

I.R.C. § 7402(a) gives district courts broad authority to issue orders and judgments as may be "necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). This includes the remedy of disgorgement. "Disgorgement in the amount of a defendant's 'ill-gotten gains' constitutes a 'fair and equitable' remedy as it reminds the defendant of its legal obligations, serves to deter future violations of the

Internal Revenue Code, and promotes successful administration of the tax laws." <u>Stinson</u>,

239 F. Supp. 3d at 1326, *motion for relief from judgment granted,* No.

614CV1534ORL22TBS, 2017 WL 2493239 (M.D. Fla. May 21, 2017). If entitled to

disgorgement, the government need only produce a reasonable approximation of the

amount Defendants received from their illegal activities. <u>See</u> <u>S.E.C. v. Calvo</u>, 378 F.3d

1211, 1217 (11th Cir. 2004).

      The well-pled allegations of the government's complaint establish that Defendants

engaged in business practices that violate the I.R.C., that the government is entitled to a

permanent injunction, and that Defendants unjustly enriched themselves through their

wrongful conduct. Therefore, I find that the Court has the power to compel the

disgorgement of Defendants' ill-gotten gains. The next issue is whether judgment should

be entered in favor of the government and against Defendants in the amount of

$107,895.34, as suggested by the government. On this record, I conclude that the

evidence supports the entry of judgment for the stated amount.

      Exactitude of the amount is not required. <u>Stinson</u>, 239 F. Supp. 3d at 1327 (citing

<u>Calvo</u>, 378 F.3d at 1217). Nevertheless, the amount of disgorgement must be

substantiated. Meaning, "[t]here must be a 'relationship between the amount of

disgorgement and that amount of ill-gotten gain'" <u>Id.</u>; <u>United States v. Barwick</u>, Case No.

6:17-cv-35-Orl-18TBS, 2017 WL 5514257, at *4-5 (M.D. Fla. Oct. 13, 2017).

      The government bases its final disgorgement amount on "the supporting tax return

information in the IRS's possession, maintained in the ordinary course of business, and

the supporting fee information provided by the third-party tax refund processors." (Doc. 30

at 42, n. 8). In his declaration, IRS Revenue Agent Joseph Conroy states that he obtained

Electronic Fraud Detection System ("EFDS") reports created in the IRS's normal course

of business that show that information reported on the tax returns filed by Defendants in

2016, 2017, and 2018 does not match information reported to the IRS by third-parties, like educational institutions (Doc. 30-2, ¶ 8). Mr. Conroy states that the EFDS show that the so-called educational institutions reported on customers' tax returns were not qualifying educational institutions at all. He also identified certain spreadsheets of information attached to his declaration (Doc. 31).

The government also offers the declaration of paralegal Amanda Reinken who obtained records from Santa Barbara Tax Products Group, LLC,[8] including a tax preparation fee report for the Electronic Filing Identification Number ("EFIN") associated with Defendants (Doc. 30-3). Ms. Reinken declares that the refund processor "disbursed tax preparation fees related to Erilus totaling $68,332.36 in 2016, $28,835.98 in 2017 and $11,619 in 2018." (Id., ¶ 3). Ms. Reinken received the documents upon which she bases her declaration in electronic format and combined them with EFDS reports for 2016, 2017, and 2018; then cross-referenced names and social security numbers and created one spreadsheet for tax returns filed in 2016, another for 2017, and yet another for 2018 (Id., ¶¶ 5-6). Then, she cross-referenced the tax returns on the EFDS report that claimed educational credits with the customers identified "to determine which tax returns claiming the [educational] credit did not actually have any educational expenses reported by an educational institution …" (Id., ¶ 7). She also identified the customers who "received scholarships or grants exceeding the reported education expenses such that the customers would not have had any qualifying out-of-pocket education expenses" and determined the preparation fees charged for these returns (Id.). Ms. Reinken states that she then essentially replicated the task to isolate tax returns that fell into Categories A-C (Id., ¶¶ 8-21). Ms. Reinken's analysis was limited in that she was unable

---

[8] The government represents that Santa Barbara Tax Products Group, LLC is a tax refund processor located in LaJolla, California (Doc. 30-3, ¶ 2).

> [T]o identify the fee for every customer identified on the IRS
> EFDS reports whose tax return filed with and EFIN associated
> with the Defendants described above in 2016, 2017, or 2018
> claimed an education credit where no IRS Form 1098-T was
> submitted to the IRS by an educational institution or where the
> scholarships and grants provided to the student exceeded the
> amount of the tuition billed to the student as reported on Form
> 1098-T, claimed business income and/or expenses on Forms
> Schedule C, or claimed the Earned Income Tax Credit. The
> records from Santa Barbara Tax Products Group, LLC did not
> show the amount of the fee disbursed for every tax return
> identified on the IRS EFDS reports for the Defendants.

(Id., ¶ 22). Accompanying Ms. Reinken's declaration is a "Certificate of Authenticity for Business Records," digitally signed by Meshawn Randall, Legal Custodian of Records for the Santa Barbara Tax Products Group (Doc. 30-5). Ms. Randall certifies that,

> I, Meshawn Randall, attest on penalty of criminal punishment
> for false statement or false Attestation that I am employed by
> Santa Barbara Tax Product Group and that my official title is
> Legal Custodian of Records. I further state that each of the
> records attached hereto is/are the original records which are
> maintained in the custody of Santa Barbara Tax Product
> Group. I further state that:
>
> A)      Such records were made, at or near the time of the
> occurrence of the Matters set forth, by (or from information
> transmitted by) a person with Knowledge of those matters;
>
> B)      Such records were kept in the course of a regularly
> conducted business activity;
>
> C)      The business activity made such records as a regular
> practice, and
>
> D)      If such records are not the original, such record is a
> duplicate of the original. I certify on Penalty of criminal
> punishment for false statement or false attestation that the
> foregoing is true and accurate to the best of my knowledge
> and belief.

(Doc. 30-5 at 1). Ms. Randall's certification sufficiently authenticates the exhibits under FED. R. EVID. 803(6); Cf. Williams v. Eckerd Family Youth Alternative, 908 F. Supp. 908, 911 (M.D. Fla. 1995) (An exhibit may be properly authenticated by a person through whom the exhibits could be admitted into evidence) (citing Burnett v. Stagner Hotel

- 14 -

Courts, Inc., 821 F. Supp. 678, 679 (N.D. Ga. 1993)). Based upon this record, I

recommend that the district court enter judgment requiring Defendants, jointly and

severally, to disgorge $107,895.34 to the government.

### III. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) The government's Motion for Default Judgment (Doc. 30) be **GRANTED**.

(2) The Court enter a permanent injunction against Defendants, in the form

proposed by the government (Doc. 30-6).

(3) The Clerk be directed to **ENTER** judgment against Defendants, jointly and

severally, in the amount of $107,895.34 and **CLOSE** this case.

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions. A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual

finding or legal conclusion the district judge adopts from the Report and

Recommendation. See 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on July 27, 2018.

THOMAS B. SMITH
United States Magistrate Judge


Copies furnished to:
      Presiding United States District Judge
      Counsel of Record
      Any Unrepresented Parties